IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

FREZGI KELETE MEHARI,

                Petitioner,

v.                                                       CIVIL ACTION NO.  2:26-cv-00039

CHRISTOPHER MASON, et al.,

                Respondents.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner Frezgi Kelete Mehari's ("Petitioner") Petition for Writ of Habeas Corpus.  (ECF No. 1.)  For the reasons discussed below, the Petition is **GRANTED**.

### I.     BACKGROUND

Petitioner is just one of many individuals who were arrested and detained by Immigration Customs and Enforcement ("ICE") officers while travelling on Interstate 77 in January 2026. (*See* ECF No. 1 at 3, ¶ 9.)  Specifically, Petitioner, a long-haul truck driver, was driving his truck cross-country on January 13, 2026, when he was required to stop at a truck inspection station on Interstate 77.  (*Id.* at 3–4, ¶¶ 9, 19; *see also* ECF No. 24 (testimony at the show cause hearing on January 28, 2026).)  According to the Government, when Petitioner stopped at the inspection station, the West Virginia Public Service Commission officer contacted ICE, which concluded that Petitioner was in the United States unlawfully.  (*See* ECF No. 24.)

1

That is not the whole story, though. Petitioner is a citizen and national of Eritrea and a noncitizen present in the United States. (ECF No. 1 at 4, ¶ 15.) After facing tortuous conditions in his home country, Petitioner fled to the United States. (*Id*., ¶¶ 16, 17.) Once here, he was apprehended by the United States Border Patrol near San Diego, California on June 21, 2023. (ECF No. 16-2 at 3.) The Border Patrol Agent determined that Petitioner had unlawfully entered the United States, and Petitioner was ultimately transported to the "San Diego Sector" for further processing. (*Id.*) Once there, Petitioner was released into the United States on an Order of Release on Recognizance,[1] pursuant to 8 U.S.C. § 1226. (*See id.* at 4.)

Petitioner adhered to the Immigration and Nationality Act ("INA") after his entry into the United States, including by participating in the removal proceedings that were initiated against him in September 2023. He entered an appearance, retained an attorney, and filed an application for asylum, withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, and protection under the Convention Against Torture. (*See* ECF No. 16-4 at 5; *see also* ECF No. 1 at 4, ¶ 17.) His application, which is supported by "sworn declarations detailing his forced military service, detention, physical abuse, torture, and prolonged imprisonment by Eritrean authorities," is based on "past persecution and a well-founded fear of future harm if returned to Eritrea." (ECF No. 1 at 4, ¶¶ 17, 18.) A hearing in his removal proceedings is scheduled for July 16, 2026. (*Id.*, ¶ 17; *see also* ECF No. 16-4 at 2.)

Despite following the rules, ICE detained Petitioner on the side of Interstate 77, allegedly pursuant to 8 U.S.C. § 1225. After his arrest on January 13, 2026, Petitioner has been detained in

---

[1] The Court notes that Respondents did not produce this document. The record indicates that Border Patrol also gave Petitioner, *inter alia*, a Notice of Custody Determination, (Form I-286), (*see* ECF No. 16-2 at 4), which was not produced, and a Notice to Appear for removal proceedings (Form I-862), which was produced, (ECF No. 16-5).

2

the South Central Regional Jail ("SCRJ") in Charleston, West Virginia. (ECF No. 1 at 3, ¶ 9.) To date, Petitioner remains in civil detention at SCRJ, along-side those facing criminal charges and convicted criminals. (*See id.* at 5, ¶ 20 (claiming that his detention is "civil and administration in nature" and is "not based on any criminal conviction or charge").) To date, Petitioner has not had an administrative judge or neutral decisionmaker determine that his confinement is justified based on an individual assessment. (*See id.* at 5–6, ¶¶ 22–25, 28–29.) Instead, *three days after Petitioner had already been detained*, ICE issued an arrest warrant against Petitioner. (*See* ECF No. 22-1 at 2.)

Consequently, Petitioner filed the pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), which identified Christopher Mason, as the Superintendent of SCRJ (the "State Respondent"), as a respondent, as well as Michael Rose ("Rose"), the Acting Field Office Director of the Philadelphia Field Office of ICE; Todd Lyons ("Lyons"), the Acting Director of ICE; Kristi Noem ("Noem"), the Secretary of Homeland Security; and Pamela Bondi ("Bondi"), the United States Attorney General, (collectively the "Government"). (ECF No. 1.) The Petition alleges that his detention violates the Fifth Amendment Due Process Clause, the Fifth Amendment Equal Protection Clause, the INA, the Administrative Procedure Act, and the Suspension Clause of the United States Constitution. (*Id.*) Petitioner seeks immediate release from custody or, in the alternative, an order "directing Respondents to provide him with a constitutionally adequate custody hearing." (*Id.* at 1–2.)

Petitioner then filed an Expedited Motion to Set a Show Cause Hearing, (ECF No. 4), which the Court granted, (ECF No. 10). Pursuant to the Court's Show Cause Order, both the State Respondent and the Government filed respective responses to the Petition. (*See* ECF Nos. 15,

3

16-1.)  Of relevance, the Government moved to dismiss the Petition for lack of jurisdiction and failure to state a claim.  (ECF No. 16-1.)  Petitioner filed a Reply, (ECF No. 19-1), and both parties made several filings with supplemental information, (ECF Nos. 22, 23, 25, 26).

On January 28, 2026, the Court held a show cause hearing on the Petition (the "Show Cause Hearing").  (ECF No. 24.)  Respective counsel for Petitioner and all respondents appeared and were permitted to present arguments.[2]  As such, this issue is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  The "heart of habeas corpus" is the challenge to a petitioner's confinement (or the duration of his confinement), where he seeks "immediate release or a speedier release from that confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973).  Thus, to be clear, "habeas corpus is a broad, independent writ designed to address challenges to any illegal custody," *Wall v. Kiser*, 21 F.4th 266, 273 (4th Cir. 2021), including those "by executive direction," *Preiser*, 411 U.S. at 484. Thus, non-citizens may use the writ in immigration-related matters where no other statutory mechanism for review is provided.  *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001). Indeed, challenges to present immigration confinement "fall within the 'core' of the writ of habeas corpus."  *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)).

---

[2] The State Respondent's Response to the Court's Show Cause Order makes no argument other than that he "defers to the Federal Respondents' position," (ECF No. 15), and his counsel did not present any argument at the Show Cause Hearing.

Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) ("A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." (internal citations and brackets omitted)). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243. The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence. *Walker v. Johnston*, 312 U.S. 275, 286 (1941) ("On a hearing [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence.").

### III. DISCUSSION

This case arises out of a dispute over immigration statutes, specifically as to whether the mandatory detention statute, 8 U.S.C. § 1225, or the discretionary detention statute, 8 U.S.C. § 1226, applies to Petitioner. Petitioner contends that § 1226 applies, which entitles him to a bond hearing, but the Government insists that Petitioner is detained under § 1225, which does not entitle him to a bond hearing. That dispute is the foundation of Petitioner's due process claim. In its Motion to Dismiss, the Government also raises the issue of subject matter jurisdiction. (ECF No. 16-1.)

However, the Court has already thoroughly addressed all of these issues and rejected the Government's positions. *See Solano v. Mason*, 2:26-cv-00045, (S.D. W. Va. Feb. 4, 2026) (ECF No. 25) (hereinafter "*Solano*").

First, the Court has jurisdiction. *Solano,* at 9–19.

5

Second, Petitioner's detention is governed by § 1226(a). *Id.* at 19–31. Like *Solano*, "there is no evidence that Petitioner was actively seeking admission into the United States," as the record indicates that Petitioner entered the United States in 2023, works as a long-haul truck driver, and resides in the United States. *See id.* at 26. Further, the Government's "exhibits regarding Petitioner's arrest, release, and subsequent re-arrest are by themselves a sufficient basis to conclude that he was detained pursuant to Section 1226." *Id.* at 31.

Third, Petitioner is protected by the Fifth Amendment Due Process Clause and is being held contrary to law. Like *Solano*, Petitioner is entitled to a bond hearing pursuant to § 1226(a) but has not received one despite being detained since January 13, 2026. "Such a delay is a violation of Petitioner's due process rights," which is supported by an application of the factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). *Id.* at 32–40. Of relevance, the Government would not "face any form of undue burden by following the law in its efforts to enforce the INA" because "providing Petitioner a bond hearing does not even ensure he will be released on bond," and it is unlikely that Petitioner's potential release could burden those interests, as Petitioner has no criminal record or gang affiliations and has voluntarily attended his deportation hearings. *Id.* at 37–40.

Fourth, the only appropriate remedy is immediate release. *Id.* at 41–42.

Accordingly, the Government's Motion to Dismiss, (ECF No. 16-1), is **DENIED**, and the Petition for Writ of Habeas Corpus, (ECF No. 1), is **GRANTED**.

### IV.    CONCLUSION

For these reasons, discussed more thoroughly in *Solano*, the Government's Motion to Dismiss, (ECF No. 16-1), is **DENIED**, and the Petition for Writ of Habeas Corpus, (ECF No. 1),

is **GRANTED**. Further, Respondents are **ORDERED** to **RELEASE PETITIONER IMMEDIATELY** from civil immigration custody, and Respondents are **PROHIBITED** from re-arresting and detaining Petitioner pending further order of this Court.

  **IT IS SO ORDERED**.

  The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record, any unrepresented party, and the United States Attorney's Office for the Southern District of West Virginia.

        ENTER:  February 5, 2026

        _____
        THOMAS E. JOHNSTON
        UNITED STATES DISTRICT JUDGE